K34KKEWC                         TELEPHONE CONFERENCE

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    KEWAZINGA CORP.,

4                    Plaintiff,

5               v.                              18 CV 4500 (GHW)

6    MICROSOFT CORPORATION,

7                    Defendant.

8    ------------------------------x
                                            New York, N.Y.
9                                           March 4, 2020
                                            4:10 p.m.
10
     Before:
11
                         HON. GREGORY H. WOODS,
12
                                            District Judge
13
                            APPEARANCES
14
     STROOCK & STROOCK & LAVAN LLP
15        Attorneys for Plaintiff
     BY:  SAUNAK KIRTI DESAI
16        GREGORY SPRINGSTED

17   KLARQUIST SPARKMAN LLP
          Attorneys for Defendants
18   BY:  KRISTIN CLEVELAND
          RYAN FREI
19        JOHN D. VANDENBERG

20

21

22

23

24

25

K34KKEWC                         TELEPHONE CONFERENCE

1          (In chambers; parties present telephonically)

2          THE COURT:  This is Judge Woods.  Do I have counsel

3    for plaintiff on the line?

4          MR. DESAI:  Yes, your Honor.  This is Saunak Desai,

5    for Kewazinga Corp.  And with me is Gregory Springsted.

6          THE COURT:  Thank you.

7          Do I have counsel for defendant on the line?

8          MR. VANDENBERG:  Yes, your Honor.  John Vandenberg,

9    for Microsoft.  And with me is Ryan Frei and Kristin Cleveland.

10         THE COURT:  Good.  Thank you very much.

11         So, counsel, I scheduled this conference in response

12   to the submissions by the parties in the joint letter that was

13   filed on February 26.  I want to take up the application for

14   leave to amend Microsoft's invalidity contentions.  That is the

15   principal item on the agenda for this conference.  I also hope

16   to begin to discuss the application to seal portions of the

17   application and a number of the documents that were submitted

18   in connection with it.

19         With that, let's begin with counsel for Microsoft.  I

20   should say, I've read the letter, I read the other materials

21   that you submitted together with it, I have a good sense of the

22   issue.  To the extent that either party wishes to supplement

23   the materials that you've presented to me in your letter

24   briefing, you have leave to do so, but do be mindful that I

25   have read the materials that have been submitted to date.

1              Again, let me turn to counsel for Microsoft.  Counsel?

2              MR. VANDENBERG:  Thank you, your Honor.  John

3     Vandenberg.

4              Your Honor, we submit that its Kewazinga who has

5     lacked diligence here and Microsoft who was prejudiced.

6              The starting point, from a factual standpoint, is

7     September 1998.  So, in September '98, Kewazinga met with

8     Sarnoff, it was their first apparent meeting on this project,

9     and what's disputed on this motion are four postmeeting Sarnoff

10    documents describing technology to Kewazinga.

11             Now, in December of 2019 and January of this year,

12    Kewazinga made four new disclosures that put those postmeeting

13    Sarnoff documents in a new light.  So we'd had the postmeeting

14    Sarnoff documents that are primarily disputed here, but we

15    submit there were these four new disclosures at the end of

16    discovery that put them in a new light, and I'd like to go

17    through those four disclosures.

18             First, on December 10th, Kewazinga gave us their third

19    supplemental rog response on the issue of conception, and, for

20    the first time, they had identified the two premeeting Sarnoff

21    documents and identified those as evidence of conception by

22    Kewazinga.  So that implies that Kewazinga, before the meeting

23    with Sarnoff, had these two premeeting Sarnoff documents in

24    their hands.

25             Second, also on December 10th, or thereabouts,

K34KKEWC                    TELEPHONE CONFERENCE

1   Kewazinga produced those two documents and included the

2   April 1996 -- so that's two and a half years before the meeting

3   with Kewazinga -- an April 1996 proprietary-labeled Sarnoff

4   document describing mosaicking, and tweening, and other

5   features that eventually wound up in Kewazinga's second patent

6   application.

7          The third new disclosure was on January 21st and 22nd

8   of this year in Mr. Worley's deposition, where he admitted that

9   Kewazinga has no evidence to corroborate that Kewazinga had

10  conceived of either tweening or mosaicking before they met with

11  Sarnoff.

12         And the fourth new disclosure, also January 21st/22nd,

13  was Mr. Worley admitting that the product that Sarnoff had

14  designed for Kewazinga, and that had been described in those

15  postmeeting documents, was covered by the second patent that

16  they filed.  And this is something that previously they had

17  resisted admitting.  They had previously resisted admitting

18  that the product that was made by Sarnoff actually fell within

19  those patents.

20         And then, in response to that, we have asked them,

21  and, so far, Kewazinga has declined to explain, how and when

22  Kewazinga received those two premeeting documents and why they

23  were not produced earlier in the case.

24         So I'd like to turn, first, to prejudice.

25         Microsoft was prejudiced here because we deposed the

K34KKEWC                    TELEPHONE CONFERENCE

 1    other named inventor, Mr. Sorokin, and we deposed the Sarnoff

 2    employees that Kewazinga, in their joint letter, identified,

 3    and we deposed those individuals without having these

 4    premeeting documents.  Kewazinga, presumably, had them, but we

 5    did not have them when we deposed the named inventor, Sorokin

 6    or Sarnoff.

 7          We submit that Kewazinga has not been prejudiced for

 8    three reasons:

 9          First, it presumably knew all of these facts.  It knew

10    it had no way of corroborating a premeeting conception

11    document.  It knew it had received from Sarnoff disclosures of

12    tweening and mosaicking before the meeting, et cetera.  And it

13    knew that the Sarnoff-created product fell within the second

14    patent.

15          Second, Kewazinga, in their letter, say that this is a

16    new theory of invalidity.  And, there, maybe it's a quibble,

17    but it is not a new theory of invalidity.  The theory of

18    invalidity here is obviousness under Section 103 of the Patent

19    Act.  It is based on some other references – Taylor, Apple,

20    QTZR – in view of some secondary references.  From the

21    beginning, we've identified Sarnoff prior art as some of that

22    secondary reference.  So this motion is seeking to add six new

23    exhibits in support of that Sarnoff prior art in support of the

24    old theory of obviousness.

25          And then the third point on prejudice is, we would

K34KKEWC                         TELEPHONE CONFERENCE

1    submit, that if the Court accepts the consented-to portion of

2    our motion; namely, Kewazinga has conceded that it would be

3    proper for us to amend to address as 102(f) prior art the

4    premeeting documents that they produced late, we would submit

5    if the Court accepted that portion, we would submit that should

6    be the baseline in evaluating any alleged prejudice to

7    Kewazinga, if we also added four additional postmeeting

8    exhibits.

9           Turning to diligence:  Kewazinga itself has not been

10   diligent, either producing these documents or citing them as

11   evidence of conception.  We pushed hard to get a conception

12   date out of them, and, as the third supplemental response

13   suggests, it took many iterations before we got them to finally

14   take this position and identify these documents in December.

15          On the flip side, we submit that we were diligent.

16   Those new disclosures, in December and January, really flipped

17   the timeline here.  Before we had those disclosures, the only

18   Sarnoff documents that we had that were disclosures from

19   Sarnoff to Kewazinga of relevant technology were after the

20   parties had met, after Kewazinga and Sarnoff met, back in

21   September 1998.  So, in that scenario, with the presumption of

22   validity, it would be a very hard argument to make that these

23   documents that flowed out of that meeting, the postmeeting

24   documents, were actually the ideas and inventions of Sarnoff,

25   not influenced by the meeting.  But now we know that the

K34KKEWC                     TELEPHONE CONFERENCE

1    postmeeting documents were actually a continuation of a stream

2    of disclosures from Sarnoff to Kewazinga that began before the

3    meeting.  So that puts everything in a different light.

4              We also know from Mr. Worley -- and I believe he may

5    have been testifying as a 30(b)(6) at that point, but at least

6    as an officer of the company -- but Kewazinga has no evidence

7    to corroborate that they invented this stuff before the

8    meeting, and, therefore, they can't prove they invented it

9    before the premeeting disclosure documents that have now been

10   produced.

11             So now, we submit, we finally have the clear and

12   convincing evidence that makes sense for us to rely on these

13   four additional postmeeting documents as prior art, as 102(f)

14   prior art.

15             In conclusion, your Honor, if Kewazinga had come clean

16   and produced these documents, the premeeting documents, a year

17   ago, and identified those as evidence of alleged conception,

18   and we didn't at that point then identify the postmeeting

19   documents as 102(f), well, then, yes, we would not have been

20   diligent.  But as it is, Kewazinga was the one who was not

21   diligent and Microsoft is the one that's been prejudiced.

22             THE COURT:  Good.  Thank you.

23             Let me turn to counsel for plaintiff.  Counsel?

24             MR. DESAI:  Yes, your Honor.  I'd like to start by

25   addressing counsel -- Microsoft's counsel focused heavily on

1     the two documents that we produced in December and seems to --

2     attempts to link that back to the entire issue in reference to

3     documents, but I believe that they're fundamentally

4     misunderstanding what those documents are and what they show.

5     And I'll focus on one quote that I believe Mr. Vandenberg said,

6     is that the documents that were produced in December were part

7     of a stream of disclosures to Kewazinga before the meeting

8     between Sarnoff and Kewazinga took place.  That isn't the case.

9     That's not what the documents are.  And it's apparent from the

10    documents themselves.

11            One is a public website, the Sarnoff website, as it

12    existed prior to that meeting date, and another is a document

13    that is a Sarnoff marketing document that has information about

14    some of the technology that it provides.

15            Now, the most fundamental misunderstanding, I believe,

16    is that Microsoft appears to believe that Kewazinga's points to

17    those documents as some sort of development documents or

18    suggesting that information was taken from those documents as

19    to the conception of the inventions.  The reason those

20    documents were cited and laid out in Kewazinga's interrogatory

21    response, in its corroboration of the testimony of the named

22    inventors, including a named inventor that has not been

23    affiliated with Kewazinga for 20 years nearly, is that

24    Kewazinga was aware of Sarnoff, and not just Kewazinga, but

25    people were aware of Sarnoff in that time period, before

Kewazinga met with Sarnoff, and they were known for having image processing technology in the sense of algorithms and specific types of -- in that sense of code and software.

That's actually why Kewazinga went to Sarnoff once it had its idea, was because they were known for having that technology that could be used to create a commercial product based on the ideas in the invention.  That is what those documents show.

Microsoft has completely either misunderstood or misrepresented those documents and is suggesting that there was some development based of an idea based on those documents.  I don't believe that's the case.

Now, I will -- just to address a few other things that have been stated on those documents:  I believe Mr. DiBernardo, at his recent deposition, actually did provide some of the information that Mr. Vandenberg says that Kewazinga has not provided about those documents.  But, again, the main thing to understand about those two documents that Mr. Vandenberg focuses on heavily is that they are just corroboration of the points that both named inventors testified, which is why Kewazinga had approached Sarnoff after they had already formed their idea for coming up with the invention.  They are not suggesting that Kewazinga looked at those documents or took those documents into account as part of coming up with their invention.

K34KKEWC                    TELEPHONE CONFERENCE

1       And based on that, I believe the entire premise of

2   Microsoft's argument falls apart, because as you noticed from

3   his argument, it seems all to be based on those documents.

4       Now, I would like to step back a little bit and

5   address some of the other points that were made.

6       A very fundamental issue, I think, is that it's

7   important to be clear about what the amendment entails because

8   Microsoft is lumping together six different documents, as well

9   as a vaguely defined catchall, as what it calls Sarnoff 102(f)

10  prior art.  But it's using those things for different purposes,

11  and it's important to understand the differences between them,

12  because what they are trying to do is combine them with prior

13  art.  And although Mr. Vandenberg contends that that's not a

14  new theory, it is commonly a new theory to add a new prior art

15  reference, is considered -- to add a new prior art reference to

16  be relied upon as a part of an obviousness combination.

17      So they've grouped them all together, but they really

18  should be considered individually; as even Microsoft recognizes

19  from the redline of its invalidity contentions, they have

20  different disclosures.  And, so, the important thing to

21  understand about how we felt before we sent the documents is

22  that there is no dispute that they've been in Microsoft's

23  possession since March of 2019, nearly a year ago, and what

24  they really are is documents that were created by Sarnoff for

25  Kewazinga; that is, after Kewazinga went to Sarnoff with its

1    idea, so that Sarnoff could help create -- build a commercial

2    product for Kewazinga based on its idea, Sarnoff created

3    documents as part of that work.

4           So, that's the context of those four contested

5    documents.  I'll also note that there is reference that was not

6    previously addressed during counsel's statement, but there is

7    an attempt to add a vague catchall to its contentions, so it

8    can apparently combine what is, quote, all aspects of the case

9    that's been developed by Sarnoff and disclosed to Kewazinga or

10   a Kewazinga patent applicant before October 15, 1999.

11          Now, there's no indication of what specific

12   information or documents are encompassed by that catchall, and

13   it provides next to nothing in terms of notice about what an

14   obviousness combination based on that catchall would even be,

15   but even putting aside the rules on the amendment of

16   contention, that catchall wouldn't even have been appropriate

17   in earlier contentions because it doesn't explain what

18   Microsoft is relying on as part of its invalidity theory.

19          So Microsoft has the burden of establishing diligence,

20   and it hasn't satisfied that here, because there is no dispute

21   that they've had the documents since March 2019, and they have

22   not put forth a proper justification for why they have waited.

23   So, I think I addressed one justification that they've raised,

24   which is, I believe, their fundamental misunderstanding of the

25   two documents that Kewazinga cited, which are not showing what

1   Microsoft or somebody's showing.  That was set forth in our

2   joint letter as well.

3           But what they do point to in their letter is that --

4   their reason they waited to depose Mr. Worley, but that doesn't

5   address the issue here because they have not pointed to what

6   they learned from Mr. Worley that warrants an amendment.  They

7   say that they learned that they were able to supposedly learn

8   that Kewazinga cannot prove its allegation of having conceived

9   the claimed invention before Sarnoff did, but let's be clear

10  here that the burden of proving invalidity is on Microsoft, and

11  for 102(f) in particular, Microsoft has the burden of proving

12  that the named inventors did not invent the subject matter

13  sought to be patented.  That's the language of the statute, and

14  as the Federal Circuit held in the case law we cited, Microsoft

15  has the burden of proving that improper inventorship.

16          So, given that it has the burden, Microsoft can't hold

17  back arguments to -- on things that it has the burden to prove

18  until it supposedly objectively believed that Kewazinga can't

19  rebut its own those contentions.  A good cause to amend doesn't

20  turn on Microsoft's own beliefs about the strength of its

21  argument.  That's essentially what Microsoft is arguing, that

22  they had some argument, but they chose to wait to disclose it

23  until at least, in their view, they confirmed that argument.

24          Now, that approach would allow defendants to hold back

25  certain types of prior references until the end of discovery

1    and then say, well, we didn't learn anything during discovery

2    about an early conception date, so now we're disclosing all

3    this other prior art as well.  But that's not how invalidity

4    contentions work.  The theory of invalidity needs to be

5    disclosed regardless of whether there's some question as to

6    whether the patentee can rebut that theory.

7            I'd also like to note that, although Microsoft says

8    that it's learned something from Mr. Worley's deposition, that

9    Kewazinga can't corroborate an earlier conception date, which,

10   again, is improperly shifting the burden of proof.  Both

11   Mr. Worley and a separate named inventor, Mr. Scott Sorokin,

12   who, again, has not been affiliated with Kewazinga for 20

13   years, both testified, independently of each other, that

14   Kewazinga conceded the invention before meeting Sarnoff, and he

15   testified that the reason that Kewazinga even went to Sarnoff

16   was in order to get help with building a commercial version of

17   the product once they had that idea.

18           So, it's not like Microsoft is pointing to a changed

19   understanding of the substance of these contested documents

20   that it wants to add to its contentions.  They haven't

21   suggested the documents were difficult to understand or that

22   they learned something new about the documents; in fact, they

23   didn't even ask very many questions about those documents to

24   Mr. Worley.  I believe for some of them, they didn't ask any

25   questions.  So I don't believe that they have actually shown

that they learned something from Mr. -- with Mr. Worley's

deposition that would change -- show any change to

understanding here.

          And as to prejudice, again, much of Mr. Vandenberg's

argument about prejudice was focusing on some supposed

prejudice to Microsoft, that, again, I would submit is based on

their own misunderstanding of the documents that Kewazinga

produced and cited in an interrogatory response.  But the

prejudice here to Kewazinga was that Sarnoff was deposed as a

corporation back in November, and prior to that deposition,

there was no -- this theory was not in the case, Microsoft had

not put it in its contentions.  And so by the (inaudible) and

raising it in an amendment, Microsoft impeded Kewazinga's

ability to even test that theory or ask about it during the

deposition of Sarnoff, which, again, was deposed as an

organization, as a 30(b)(6).

          So I believe there is prejudice in this late amendment

that has not been justified in any way.

          THE COURT:  Good.  Thank you.

          Counsel for plaintiff, when did you learn that you had

these documents?  Why did you not produce them until this

year -- or, I'm sorry, recently?

          MR. DESAI:  Well, the documents we had -- the two --

so there's one -- there are two separate documents.  One was

recently found.  I believe Mr. DiBernardo testified at his

1    deposition that it was received from a consultant that worked

2    with Kewazinga, Christian Tilley, recently, but just recently

3    before it was produced.  The other document was just a Sarnoff

4    publicly available website from August 1998.  Again, these

5    documents are just showing that corroborating testimony from

6    the experts about why Kewazinga went to Sarnoff.  It wasn't

7    clear that they were -- I believe Microsoft has taken them to

8    be development documents or suggesting that IT is worth taking

9    from them in terms of coming up with ideas for the invention,

10   but they weren't.  But that's not the case.  And I believe

11   Mr. DiBernardo testified that his understanding was that one of

12   those documents was not in the possession of Kewazinga.  The

13   point was it was to show the kind of technology that Sarnoff

14   had.

15          And I want to return to one point, is that there

16   wasn't really a surprise about this because Kewazinga's own

17   patent cites Sarnoff's patents and incorporates those by

18   reference.  Those were talked about heavily during the claim

19   construction.  The Burt patent and the Hanna patent, those are

20   Sarnoff patents that were incorporated by reference into the

21   Kewazinga patent.  So obviously predated the filing of the

22   Kewazinga patent.

23          In fact, Microsoft has relied on those patents as

24   prior art in its invalidity contentions, so it's not really a

25   surprise that Sarnoff had mosaicking and tweening technology,

1    which is what the Burt patent and the Hanna patent are directed

2    to.  So, although Microsoft, again, focuses heavily on those

3    documents, I believe those documents, one, are not direct

4    evidence of conception, they are just corroborating the

5    Kewazinga testimony about when -- about why Kewazinga went to

6    Sarnoff; and, secondly, cumulative of what's already on the

7    face of the patent, which is that Sarnoff has mosaicking and

8    tweening technology that's incorporated by reference into the

9    Kewazinga patent and used in a new light.

10            THE COURT:  Good.

11            So, thank you very much, counsel, for your arguments.

12   Give me just a few moments as I consider them, and I'll be back

13   briefly with a response.

14            (Pause)

15            THE COURT:  So, counsel, thank you very much.  I'm

16   back with you now.

17            Let me first describe the basic legal principles that

18   I will apply here as you're about to hear, given that, in

19   pertinent part, the Court has adopted the local rules of the

20   Northern District of California.  I'm going to look to the law

21   both for that district as well as Federal Circuit law with

22   respect to these issues.  So let me just begin.

23            Under the Northern District of California's local

24   patent rules, "Amendment of the infringement contentions or the

25   invalidity contentions may be made only by order of the Court

K34KKEWC                    TELEPHONE CONFERENCE

1    upon a timely showing of good cause.  Nonexhaustive examples of

2    circumstances that may, absent undue prejudice to the nonmoving

3    party, support a finding of good cause include:  (a) a claim

4    construction by the Court different from that proposed by the

5    party seeking amendment; (b) recent discovery of material,

6    prior art, despite earlier diligent search; and (c) recent

7    discovery of nonpublic information about the accused

8    instrumentality which was not discovered, despite diligent

9    efforts, before the service of the infringement contentions."

10   Rule 3-6.

11            Courts "have understood the good-cause requirement in

12   the local patent rules to require a showing that the party

13   seeking leave to amend acted with diligence in promptly moving

14   to amend when new evidence is revealed in discovery."  02 Micro

15   International Ltd. v. Monolithic Power Sys., Inc., 467 F.3d

16   1355, 1363 (Fed. Cir. 2006).  Good cause "considers first

17   whether the moving party was diligent in amending its

18   contentions and then whether the nonmoving party would suffer

19   prejudice if the motion to amend were granted."  Acer, Inc. v.

20   Tech Prob. Ltd., 2010 WL 3618687, at *3 (N.D.Cal. Sept. 10,

21   2010)(citing 02 Micro, 467 F.3d at 1355).  Importantly,

22   however, the Court may only consider prejudice to the nonmoving

23   party if the moving party is able to demonstrate diligence.

24   Apple v. Samsung, 2012 U.S. Dist. LEXIS 83115, at *13, 2012 WL

25   1067548 (N.D.Cal. Mar. 27, 2012)(collecting cases).

1      Courts have understood diligence to require a "showing

2 that the party seeking leave to amend acted...properly [in]

3 moving to amend when new evidence is revealed in discovery."

4 02 Micro, 467 F.3d at 1363, 1366 (collecting cases).  The

5 burden "is on the movant to establish diligence rather than on

6 the opposing party to establish lack of diligence."  02 Micro,

7 467 F.3d at 1366.  Furthermore, the moving party must show that

8 it was both diligent throughout discovery and in "discovering

9 the basis for the proposed amendment."  West v. Jewelry

10 Innovations, Inc., 2008 WL 4532558, at *2 (N.D.Cal. Oct. 8,

11 2008).

12      In determining whether good cause exists, courts have

13 also considered such other factors as (1) the reason for the

14 delay, including whether it was within the reasonable control

15 of the party responsible for it; (2) the importance of what is

16 to be excluded; (3) the danger of unfair prejudice; and (4) the

17 availability of a continuance and the potential impact of a

18 delay on judicial proceedings.  See Oy Ajat, Ltd. v. Vatech

19 Am., Inc., 2012 WL 1067900, at *20-21 (D.N.J. Mar. 29,

20 2012)(collecting cases).

21      The requirement that the moving party act with "the

22 requisite diligence" does not mean, however, that courts demand

23 "perfect diligence" – "hindsight is often 20/20," and courts

24 recognize that "identifying and evaluating prior art can be

25 difficult."  Fujifilm Corp. v. Motorola Mobility LLC, 2014 WL

1    491745, at *4 (N.D.Cal. Feb. 5, 2014).  "Courts have allowed

2    amendments when the movant has made an honest mistake, the

3    request to amend did not appear to be motivated by

4    gamesmanship, or where there was still ample time left in

5    discovery."  OpenDNS, Inc. v. Select Notifications Media, LLC,

6    2013 Westlaw 2422623, at *3 (N.D.Cal. June 3, 2013).

7            Having considered all of the facts as presented to me

8    in light of the governing standard, I'm going to permit

9    Microsoft to amend its contentions.  Let me just say a few

10   brief words about the diligence and prejudice prongs that I'm

11   required to consider in connection with this application.

12           First, with respect to diligence:  Counsel for

13   Microsoft has stated a number of ways in which it believes or

14   asserts that it was diligent here.  Among other things,

15   Microsoft asserts that it was reasonably diligent in seeking

16   this amendment because only after deposing Mr. Worley,

17   Kewazinga's 30(b)(6) witness, "could Microsoft learn that

18   Kewazinga cannot prove its allegation of having conceived the

19   claimed inventions before Sarnoff did.  That is what makes

20   these Sarnoff documents preconception prior art."  Docket

21   No. 113 at 2-3.

22           Here, too, Microsoft has explained how it is that

23   these recent disclosures of the two prior meeting documents

24   showed that this was, I believe in their word, a stream of

25   communications, and they have described that as a basis for

K34KKEWC                    TELEPHONE CONFERENCE

1    their realization, at this stage in the case, that there is a

2    viable claim that the contention should be amended as suggested

3    here.

4            Now, in response, Kewazinga has asserted that

5    "Microsoft misleadingly focuses on the two documents most

6    recently produced by Kewazinga, which are not opposed in this

7    motion.  The remaining four documents have been in Microsoft's

8    possession since March 2019.  Microsoft does not even cite

9    those four documents (the 'contested documents')."  Docket No.

10   113 at 3.

11           Kewazinga acknowledges that "because the issuance of a

12   patent creates a presumption that the named inventors are the

13   true and only inventors, id., the burden of showing misjoinder

14   or nonjoinder of inventors is a heavy one and must be proved by

15   clear and convincing evidence."  Board of Education ex rel.

16   Board of Trustees of Florida State University v. Am.

17   Bioscience, Inc., 333 F.3d 1330, 1337 (Federal Circuit 2003).

18   Thus, the argument that Microsoft could not in good faith

19   assert that Kewazinga had not conceived of the claimed

20   inventions before Sarnoff did, prior to the Worley deposition,

21   is fair and supports a finding of diligence.  See Helsinn

22   Healthcare S.A. v. Dr. Reddy's Labs, Ltd., 2013 WL 3336859, at

23   *4 (D.N.J., July 2, 2013)(finding that "additional discovery,

24   including depositions, may be necessary to reveal, develop, or

25   confirm that sufficient evidence exists to support a party's

K34KKEWC                        TELEPHONE CONFERENCE

proposed amendments" and "that pieces of the puzzle might have
been revealed at earlier times does not mean that a completely
picture was likewise available").

          I should note, as a brief aside, that I do not want to
establish a rule of the type that I understand Kewazinga to be
arguing for here; namely, that a party is required to throw any
argument into a litigation as early as they know that it might
possibly have some relevance to the case.  I think it is proper
and appropriate for a party to not interpose arguments into a
litigation unless and until they believe that they have a sound
basis upon which to do so.

          So I do not hold it against Microsoft that they chose
not to throw an issue into this case that they believe to be
unsubstantiated.  I do not believe that is improper; to the
contrary, I believe that that is consistent with their
obligations as officers of the court, and I hope that the
parties here appreciate that some degree of probity in the
selection of claims and contentions is a good thing, not a bad
thing.  Cases such as this are much harder to litigate if --
would be much harder to litigate if a party was, as Kewazinga
suggests, required to raise any possible argument, even if they
did not believe that it was viable at the time.  I will not
penalize Microsoft for failing to raise an issue at a time that
they did not understand it to be a viable one.

          Separately, the cases that Kewazinga cites do not

1    support its argument here.  In West v. Jewelry

2    Innovations, Inc., the defendant did not describe "the efforts

3    it undertook to discover additional prior art" and did not

4    "explain any impediments to finding" the prior art.  2008 WL

5    4532558, at *3 (N.D.Cal. Oct. 8, 2008).  And in Shire LLC v.

6    Amneal Pharm., LLC, the Federal Circuit stated only that the

7    defendants had not shown that the district court abused its

8    discretion in denying their motion to amend.

9             Now, with respect to prejudice, I do not believe that

10   there is a sufficient prejudice to justify denial of this

11   motion, which is otherwise clearly warranted.  Counsel for

12   Microsoft pointed to the reason why it is that this application

13   was not made previously; namely, that these documents were not

14   previously provided, but, moreover, with respect to prejudice

15   on Kewazinga, I note, first, where we are in the schedule.

16   Here, expert discovery does not close until May 2020, and

17   upcoming discovery deadline tends to loom large in the

18   prejudice analysis.  See Karl Storz Endoscopy-Am., Inc. v.

19   Stryker Corp., 2016 WL 2855260, at *7, (N.D.Cal., May 13,

20   2016)(collecting cases).  As a result, "the Patent Local Rule's

21   concern with parties sandbagging opponents late in the

22   discovery period is [not] at issue."  Fujifilm, 2014 WL 491745,

23   at *6.  To the extent that the parties wish to request leave to

24   conduct a supplemental deposition of Sarnoff, you may consider

25   making such an application to the Court.  I simply note that

there is adequate time within the expert discovery period for
the parties to conduct additional discovery as needed within
the current set of deadlines.

So, here, courts have found no prejudice where the
proposed amendments did not pose a risk to discovery motion
deadlines or the trial schedule, and given the leeway in our
current discovery schedule, I don't believe that to be a
substantial prejudice to the parties and, in particular, to
plaintiff here.

Separately, I note that a number of the arguments
raised by Kewazinga with respect to prejudice seem to go to the
merits of the proposed invalidity contention.  They argue that
these additional documents are not evidence of conception.  I'm
not deciding that at this point.  They may or may not be
evidence of conception.  Of course, if they are not, then
there's no prejudice other than the time spent in responding to
this additional contention.  If they are, then it's appropriate
for the parties to litigate this case on the merits, and I
don't believe that either of these arguments undermines the
Court's determination that Microsoft has shown a sufficient
diligence to justify the amendment to the contentions, and that
they have also shown both that part of this prejudice arises
from Kewazinga's failure to previously disclose these documents
and, also, that the prejudice to Kewazinga is not sufficient to
lead the Court to deny leave to amend.

K34KKEWC                    TELEPHONE CONFERENCE

1          So, for those reasons, I'm granting the application to

2     amend.

3          Now, I'd like to spend a little bit of time with the

4     application to seal.  I'm looking at the letter that was

5     submitted in the highlighted version, and I do not see that I

6     have adequate justification to overcome the presumption of

7     public access to judicial documents with respect to, frankly,

8     all of the highlighted information or documents.  It appears

9     that someone on the phone believes that everything in

10    Mr. Worley's deposition should be treated as under seal.  I

11    don't know what the basis for that is.  I also don't know

12    enough information to make the required on-the-record findings

13    balancing the public interest in viewing judicial documents

14    against any associated harm.  I'm supposed to make

15    particularized on-the-record findings with respect to that,

16    and, here, it appears that the basis for sealing this

17    information is an agreement by the parties to treat documents

18    and a deposition as confidential.  That is not, on its own,

19    sufficient to justify a seal.

20         So, counsel, can I hear from whoever it is that's

21    requesting these documents be redacted or sealed?  I will begin

22    with just the very first couple of highlighted sentences in the

23    letter.  The second sentence describes the content of

24    Mr. Worley's testimony; the first sentence describes the

25    allegations regarding what the content is of certain documents.

1    I don't know the basis for redacting this information or

2    sealing any of the exhibits.  The information that was

3    presented to me is very generic, and, again, the parties'

4    agreement to hold something confidential is not sufficient,

5    otherwise this would be the Star Chamber, and it's not.

6              So I understand that these redactions are requested by

7    Kewazinga, so let me hear from you.

8              MR. DESAI:  Yes, your Honor.

9              I think the one thing that may clarify something is

10   the document that you're referring to, that's providing you

11   little information, so there was initially a motion to seal

12   filed by Microsoft along with, concurrently, its filing.  I

13   believe your Honor's local rules changed recently or individual

14   rules changed recently with respect to filing material under

15   seal, and that's Rule 4(a)(2).  And I believe what it changed

16   was that the party making the -- moving and submitting the

17   joint letter, if it's the other party's confidential

18   information, that they will submit a form motion to seal and

19   the other party will submit a letter within three days

20   explaining the need to seal.

21             So Kewazinga -- and I believe there was an order from

22   the Court that came out after the motion to seal was filed that

23   Kewazinga responded to with its letter explaining the basis for

24   the confidentiality, the redactions, and the sealing.  So I

25   guess one point of clarification would be when you're referring

1    to a document that did not provide you with sufficient

2    understanding of what's under seal, are you referring to, I

3    guess, document 112 or -- sorry, yes, document 112 or document

4    118 that was filed by Kewazinga afterwards?

5              THE COURT:  I'm referring to all of the documents.

6    I've read your letter at 118.  And, counsel, to be clear, if

7    that's all that you want to give me, I'm going to unseal

8    everything.  This is not sufficient.  You say in the letter,

9    counsel, that the reason why it's being offered under seal is

10   because they've been designated as confidential under the

11   protective order.

12             The protective order specifically says that the

13   agreement by the parties to maintain a document as confidential

14   is not sufficient.  So, this is what I have, this is the only

15   basis I have, and, at this point, I'm going to unseal it.  So,

16   if you have some other argument that you'd like to present,

17   specific information that you will provide to me that provides

18   me the basis to overcome the presumption of public access to

19   judicial documents, you should do so, because the fact that the

20   parties agreed to make something confidential is not adequate.

21   The Second Circuit made that very clear very recently in the

22   Epstein case.  And I'm going to unseal everything if this is

23   your answer, counsel.

24             MR. DESAI:  Yes, your Honor.  I understand -- sorry, I

25   was just trying to clarify.  Our position is not that anything

K34KKEWC                    TELEPHONE CONFERENCE

1   should remain under seal just because of an agreement between

2   the parties.  We're completely in agreement on that point.  I

3   believe we had tried to explain in some of the -- in our letter

4   as to why the depositions and some of the other exhibits that

5   were filed include specific confidential information about the

6   business dealings between Kewazinga and third parties.  We were

7   expecting, I believe, a deadline on Monday, in accordance with

8   the rules that three days after the filing to be able to submit

9   that, but I believe then we were ordered to file it on Friday.

10  If I could request a date to submit a further explanation, that

11  would be appreciated.  But as to the exhibits that were filed,

12  it is not on the basis of an agreement between the parties; it

13  is because the exhibits and the portions of the letter redacted

14  include information that is sensitive confidential business

15  information related to the dealings of Kewazinga and a third

16  party that were based on confidential relationships.

17          THE COURT:  Thank you.

18          So please do, but your submission should be

19  particularized.  Again, just looking at the very first page of

20  the submission, because it's the first thing that I see, you

21  redact a sentence that describes Mr. Worley's testimony.  It

22  redacts a statement about what he did not know anything about.

23          What the justification will be that you will present

24  to me regarding his lack of information, showing that his lack

25  of information should be sealed, is something that I do not

K34KKEWC                    TELEPHONE CONFERENCE

seek to make up on my own.  You should look through this and

each thing that you're asking me to take out, having read the

relevant Second Circuit cases and understanding the standard

that I will be applying.  It appears to me that every statement

made by Mr. Worley in his deposition is being treated as

sealed, and there's no basis for that here.

          So, yes, I'm happy to give you additional time.  It

should be very particularized.  The fact that something

involves a business relationship, particularly whereas here,

we're talking about a business relationship from over two

decades ago, I will need very specific information to support

the finding.  Again, this is, as I understand it, a series of

information about a business relationship or communications

about technology from 20-plus years ago.  If you think that

that is still of such a nature, that its disclosure will give

rise to some actual harm, you're going to need to explain it,

because, as you know better than I do, technology is a

fast-moving field, and if you think that everything about

technology that was said 20-plus years ago has any impact on

where the market or technology is now, you're going to need to

support that with facts, because it's not my assumption.

          Good.  So, counsel for Kewazinga, when would you

propose to submit the supplemental information to me with

respect to those issues?

          MR. DESAI:  One moment, your Honor?

1          Your Honor, just based on certain deadlines in this

2     case currently pending, if your Honor would be -- if it would

3     be acceptable to file it on Monday, would that work for your

4     Honor?

5          THE COURT:  Yes, that's fine.  Thank you.  Good.  I

6     look forward to seeing it.

7          Anything else we need to take up here, first, counsel

8     for plaintiff?

9          MR. DESAI:  Nothing related to the issues.  I did want

10    to flag that I believe that there was currently a dispute

11    between the parties regarding the amendment of infringement

12    contentions that is being raised and I expect will be filed

13    soon as well.  I just wanted to flag it for the Court, but it

14    will be filed soon.

15         THE COURT:  Thank you.  I'm happy to resolve any

16    issues that the parties bring to me.

17         Counsel for defendant, anything from you?

18         MR. VANDENBERG:  No, your Honor.  Thank you.

19         THE COURT:  Good.  Thank you, all.

20                              * * *

21

22

23

24

25