UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
KEWAZINGA CORP.,                                                :
:
                        Plaintiff,        :
:
            -against-                                         :    1:18-cv-4500-GHW
:
MICROSOFT CORPORATION                                           :    ORDER
                        Defendant.         :
:
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/2021

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

This is a patent infringement case regarding three patents which teach telepresence systems, devices, and methods that enable one or more users to navigate imagery through a remote environment. Plaintiff Kewazinga Corp. ("Kewazinga") is a Delaware corporation that developed the navigable telepresence technology at issue in this case. Defendant Microsoft Corporation ("Microsoft") is a Washington corporation that, as relevant here, uses the allegedly infringing technology—navigable, street-level imagery known as "Streetside." Kewazinga initiated this action on May 21, 2018. Dkt. No. 1. On July 17, 2020, both parties moved for summary judgment. Dkt. Nos. 187, 190. The following day, the parties each moved to exclude testimony from the other party's expert witnesses. Dkt. Nos. 193, 203. On August 20, 2020, Microsoft cross-moved for summary judgment in opposition to Kewazinga's motion for summary judgment. Dkt. No. 226. In connection with those motions, the parties have submitted eleven motions to seal portions of their briefs, statements of fact, and exhibits. As discussed below, those motions are granted in part and denied in part.

**II.     THE MOTIONS TO SEAL**

On July 17, 2020, Microsoft moved to redact and seal portions of its Motion for Summary Judgment and certain supporting exhibits (Exhibits 1, 3, 7, 8, 10, 12–17, 24, 28–30, 49 and 51). Dkt. No. 188. The letters supporting that request assert that the proposed redactions include Microsoft's confidential and proprietary business information and confidential technical information, as well as exhibits and information produced by and including information designated by a third party as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order in this case (Dkt. No. 30). *See id.*, Dkt. No. 220.

On July 17, 2020, Microsoft moved to redact and seal portions of its Motion to Exclude the Testimony of Kewazinga's Experts and certain supporting exhibits (Exhibits 1–3, 8, 9, and 11–23). Dkt. No. 204. The letters supporting that request assert that the proposed redactions include Microsoft's confidential and proprietary business information and confidential technical information, as well as exhibits and information produced by and including information designated by a third party as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order in this case. *See id.*, Dkt. No. 221.

On July 18, 2020, Kewazinga moved to redact and seal portions of its Motion for Summary Judgment, Local Rule 56.1 statement, Motion to Exclude Expert Testimony, and certain supporting exhibits (Exhibits 4, 5, 8, 9, 20, 24, 37–40, 48, 49, 51–55, 60, 62 to the Motion for Summary Judgment and Exhibits 2, 5, 7–14, 16–20 to the Motion to Exclude Expert Testimony). Dkt. No. 211. The letters supporting that request assert that the proposed redactions include Microsoft's confidential and proprietary business information and confidential technical information, as well as exhibits designated "Confidential" or "Attorneys' Eyes Only" by a third party. *See id.*, Dkt. Nos. 222–23.

On August 20, 2020, Microsoft moved to redact and seal portions of its Response to Plaintiff Kewazinga's Motion for Summary Judgment and Cross Motion for Summary Judgment, Local Civil Rule 56.1(b) Responses To Plaintiff Kewazinga's Local Civil Rule 56.1(a) Statement, Local Rule 56.1(a) statement, and certain supporting exhibits to the Declaration of J. Christopher Carraway (Exhibits 1, 4, 6, 9, 10–12, 17, 22, 36, 44, and 48) and to the Declaration of Kristin L. Cleveland (Exhibit A). Dkt. No. 227. The letters supporting that request assert that the proposed redactions include Microsoft's confidential and proprietary business information and confidential technical information, as well as confidential information of third parties. *See id.*, Dkt. No. 263.

On August 20, 2020, Microsoft moved to redact and seal portions of its Response to Plaintiff's Motion to Exclude Testimony and Opinions of Defendant's Experts and certain related exhibits (Exhibits 1, 2, 9, 10, and 12). Dkt. No. 241. The letter supporting that request asserts that Microsoft seeks to redact or seal documents containing its confidential and proprietary business information and confidential technical information. *Id.*

On August 20, 2020, Kewazinga moved to redact and seal portions of its Opposition to Microsoft's Motion for Summary Judgment, Local Rule 56.1 statement, Opposition to Microsoft's Motion to Exclude Expert Testimony, and certain supporting exhibits (Exhibits 1, 2, 3, 7, 10, 11, 12, 13, 14, 29, 30, and 31 to the Opposition to the Motion for Summary Judgment and Exhibits 1, 3, 6, 7, 8, and 9 to the Opposition to the Motion to Exclude Expert Testimony). Dkt. No. 247. The letters supporting that request assert that the proposed redactions include Microsoft's confidential and proprietary business information and confidential technical information, as well as exhibits and information designated "Confidential" or "Attorneys' Eyes Only" by a third party. Dkt. No. 258.

On September 3, 2020, Microsoft moved to redact and seal portions of its Reply in Support of its Motion for Summary Judgment and two exhibits filed in support thereof (Exhibits 5 and 6). Dkt. No. 264. The letter supporting that request asserts that the proposed redactions include

Microsoft's confidential and proprietary business information, and information designated "Attorneys' Eyes Only" by a third party. *Id.* The information appears to include confidential and proprietary business information of that third party. *Id.*

On September 3, 2020, Kewazinga moved to redact and seal its Reply in Support of its Motion for Summary Judgment, Reply in Support of its Motion to Exclude Expert Testimony, Local Rule 56.1 Statements, and certain supporting exhibits (Exhibits 1, 13, 14, 16, 17, 18, 19, 20, 21, and 22 to the Reply in Support of the Motion for Summary Judgment and Exhibits 3 and 4 to the Reply in Support of its Motion to Exclude Expert Testimony). Dkt. No. 269. The letters supporting this request assert that the proposed redactions include Microsoft's confidential and proprietary business information, the confidential personally identifiable information of Microsoft employees, and information designated "Confidential" or "Attorneys' Eyes Only" by a third party. *See id.*; Dkt. No. 293.

On September 3, 2020, Microsoft moved to redact and seal portions of its Reply in Support of its Motion to Exclude Testimony and Opinions of Plaintiff's Experts and related Declaration and related exhibit (Exhibit No. 2). Dkt. No. 282. The letters supporting this request assert that the proposed redactions include Microsoft's confidential and proprietary financial information and the confidential information of a third party. *See id*; Dkt. No. 294.

On September 17, 2020, Kewazinga moved to redact and seal Exhibit B to its Request for Leave to file a Sur-reply. Dkt. No. 299. The letter supporting this request asserts that the proposed redactions include Microsoft's confidential and proprietary financial information. *See id.*; Dkt. No. 303.

On October 2, 2020, Kewazinga moved to redact and seal its Sur-reply in Opposition to Microsoft's Motion for Summary Judgment, and Exhibit 1 thereto. Dkt. No. 307. The letter

supporting this request asserts that the proposed redactions include Microsoft's confidential and proprietary financial information.  *See id.*; Dkt. No. 313.

### III. LEGAL STANDARD

There is a long-established "general presumption in favor of public access to judicial documents."  *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016).  The Second Circuit has defined "judicial documents" as documents filed with a court that are "relevant to the performance of the judicial function and useful in the judicial process[.]"  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quotation omitted); *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 620–621 (S.D.N.Y. 2011).  The presumption of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice."  *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).  Applications to seal documents must therefore be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection.  *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]"  *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).  "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Lugosch*, 435 F.3d at 120 (quotation omitted); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (requiring that a court make specific, rigorous findings before sealing a document or otherwise denying public access).  "[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."  *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599 (1978).

Higher values that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of third parties. *See E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (collecting cases). "Courts commonly find that documents that contain trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like satisfy the sealing standard." *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, 2019 WL 2918026, at *2 (N.D.N.Y. June 18, 2019) (internal quotations omitted); *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) ("Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like.").

In *Mirlis v. Greer*, the Second Circuit summarized the three steps that the Court must follow to determine whether the presumption of public access attaches to a particular document and bars sealing. *See* 952 F.3d 51, 59 (2d Cir. 2020). First, the Court determines whether the document is a "judicial document," namely, "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quotation omitted). Second, if the materials are "judicial documents," the Court "proceeds to 'determine the weight of the presumption of access to that document.'" *Id.* (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1049). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*

**IV.   DISCUSSION**

For the most part, the parties have made an adequate showing to justify their proposed redactions. There are a few exceptions to that conclusion, as discussed further below.

At the outset, the Court notes that it cannot assess the motions as to two of the documents because there is information missing from the versions filed under seal. Dkt. No. 215-2 appears to be missing pages and Dkt. No. 245-4 contains a redaction for which the Court has not been provided the underlying text. The Court cannot evaluate these proposed redactions with the information given, and thus, the requests as to those two documents are denied without prejudice.

    **a. Judicial Documents**

Step one of the *Mirlis* test is easily satisfied. Here, all of the documents at issue were submitted to the Court in support of motions for summary judgment and motions in limine. Therefore, they "would reasonably have the tendency to influence" the Court's decision on the outstanding motions. *Brown v. Maxwell*, 929 F.3d 41, 49–50 (2d Cir. 2019). This is true, regardless of "which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* (citations omitted).

    **b. Weight of the Presumptive Right of Access**

With respect to step two of the *Mirlis* test, the weight of the presumption of public access to the information the parties seek to shield from the public is significant. As stated previously, "[t]he weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Mirlis*, 952 F.3d 51, 59 (2d Cir. 2020) (quoting *Amodeo*, 71 F.3d at 1049).

The significant majority of the documents were submitted to the court as "supporting material in connection with [the parties'] motion[s] for summary judgment." *Lugosch*, 435 F.3d at 123. Accordingly, there is a strong presumption of public access. *See id.* at 121 ("Our precedents

indicate that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment."). Indeed, the presumption here is at its "highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.'" *Id.* at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)).

That said, certain of the information that is sought to be redacted carries less weight, because it does not bear directly on the analysis conducted by the Court in its resolution of the motions. The Court has considered the weight to be accorded to each of the relevant materials sought to be redacted. However, because there are a large number of requested redactions, rather than describing the weight accorded to each data point that is the subject of a sealing request, the Court will categorize the weight of the documents presented to the Court in connection with the motion for summary judgment in general terms as "significant." The Court analyzes the weight to be accorded to certain specific requests below where relevant.

The presumption of public access for the remaining documents—submitted in connection with the parties' motions in limine—is "generally somewhat lower than the presumption applied to material introduced . . . in connection with dispositive motions such as motions for dismissal or summary judgment." *Brown*, 929 F.3d at 50. Nonetheless, the Court "must still articulate specific and substantial reasons for sealing such material." *Id.*

### c. Identification and Balancing of Countervailing Interests

Step three of the *Mirlis* test requires that the Court consider the countervailing interests that weigh against public disclosure. "Foremost among the competing concerns that a court weighing disclosure must consider is 'the privacy interest of the person resisting disclosure.'" *Mirlis*, 952 F.3d at 61 (quoting *Amodeo*, 71 F.3d at 1050 (reiterating that "the privacy interests of innocent third

parties . . . should weigh heavily in a court's balancing equation")). "Such interests establish a "venerable common law exception to the presumption of access." *Amodeo*, 71 F.3d at 1051. In determining the proper weight to accord an asserted privacy interest, a court should consider both "the degree to which the subject matter is traditionally considered private rather than public," as well as "[t]he nature and degree of the injury" to which the party resisting disclosure would be subjected were the privacy interest not protected. *Id.* The latter inquiry entails "consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information." *Id.*

Here, the parties have identified four countervailing interests. The Court will discuss each of these in turn.

### i. Confidential Personally Identifiable Information

Microsoft seeks to redact the personally identifiable information (e-mail addresses) of its employees. The personal information of non-parties, including e-mail addresses, is not relevant to the adjudication of the motions at hand. Because of the significant privacy interests of non-parties, and the lack of relevance of this information to any issue in this litigation, the request to redact the e-mail addresses of Microsoft's employees is granted. *See Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2016 WL 11430775, at *8 (E.D.N.Y. May 24, 2016); *see also Burgess v. Town of Wallingford*, No. 3:11-CV-1129 CSH, 2012 WL 4344194, at *11 (D. Conn. Sept. 21, 2012) (ordering the redaction of "such individual pieces of information as a 'home address, e-mail address, phone number, and the like[ ]'" because "'[t]he Internet has revolutionized the scope and manner in which information is available for public access . . . and has also, unfortunately, provided criminals with a new medium through which to commit crimes'" and there was "minimal countervailing public interest in the disclosure of such personally identifying information." (quoting *Sec. Indus. and Fin. Markets Ass'n v. Garfield*, 469 F . Supp. 2d 25, 36 (D. Conn. 2007)).

### ii. Confidential and Proprietary Business Information

Microsoft seeks to seal and redact documents containing its confidential and proprietary business information. Microsoft asserts that exposure of this information would be disadvantageous and prejudicial to Microsoft, as it could allow competitors to develop products that compete with Microsoft, or it could be used by third parties to gain an advantage over Microsoft in business negotiations.

"The demonstration of a valid need to protect the confidentiality of confidential and proprietary business information may be a legitimate basis to rebut the public's presumption of access to judicial documents." *Lexington Furniture Indus., Inc. v. Lexington Co., AB*, No. 19-CV-6239 (PKC), 2021 WL 1143694, at *2 (S.D.N.Y. Mar. 24, 2021). Examples of commonly sealed documents include those containing "trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like." *Cumberland*, 184 F.R.D. at 506; *see also CSL Silicones, Inc. v. Midsun Group, Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *3 (D. Conn. July 12, 2017) ("[C]onfidential 'commercial information' of a business— including trade secrets, confidential research, internal business documents and information about a business's operations—has been recognized repeatedly as a proper subject for sealing.") (citations omitted); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (granting motion to redact documents containing advertising expenditures and plans, merchandising strategies, policies, and sales); *Hesse v. SunGard Sys. Int'l*, No. 12 CIV. 1990 CM JLC, 2013 WL 174403, at *2 (S.D.N.Y. Jan. 14, 2013) (permitting the sealing of "billing rates and project pricing, as well as details of specific projects completed for several clients"); *GoSMiLE, Inc. v. Dr. Johnathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (granting motion to seal "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting").

Upon review, the Court finds that for the majority of the proposed redactions, Microsoft's concerns outweigh the public's right to access this information at this stage of the case and that the proposed redactions are narrowly tailored to protect only this sensitive business information. The redacted information includes confidential information about Microsoft's business models, including details of Microsoft's sources of revenue and the amounts of its revenue and sales; quantitative details about Microsoft's user base for certain offerings; quantitative details about usage of specific product features; specific revenue amounts from certain offerings; and information regarding settlement agreements with third parties, which include confidentiality obligations to those third parties. Thus, for most of Microsoft's proposed redactions, it is clear that the information should remain private; if that information were to be disclosed, it could indeed harm Microsoft or advantage its competitors. Therefore, that information should remain sealed. *See Amodeo*, 71 F.3d at 1051 ("Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts . . . ."); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412–13 (S.D.N.Y. 2015) (sealing "highly confidential sales information, including pricing information").

However, the Court notes the following proposed redactions which appear to be overbroad. For these redactions, it is not clear from Microsoft's application that the risk of harm to Microsoft outweighs the public's right to access information contained in judicial documents, particularly when the information sought to be redacted does not appear to be specific or confidential: Dkt. Nos. 202-6; 202-7 at ¶ 28; 202-15 at 5;[1] 202-15 at ¶ 58; 212 at 19-24, 32; 218 at 9-10, and 218-3 at 224.[2]

With those exceptions aside, balancing the factors that counsel against disclosure—here, Microsoft's interest in protecting its business information—against the presumption of access, the Court finds that the presumption of access is overcome.

---

[1] For consistency, the Court refers to the ECF page numbers in all citations to the docket.
[2] In connection with their motions to seal, the parties have, in some instances, submitted the same portions of the same document for the Court's review. The Court's rulings apply consistently to any duplicate requests.

### iii. Confidential Technical Information

Microsoft also seeks to prevent the disclosure of its confidential technical information. The documents that Microsoft seeks to redact or seal contain information regarding confidential and proprietary data collection procedures, image processing procedures, specific hardware used to perform these procedures, and confidential details about Microsoft's source code, including specific algorithms and the names of specific variables and functions in that source code.

Unsealing Microsoft's technical information could allow competitors an unfair advantage, and would thus be highly prejudicial to Microsoft. *See, e.g.*, *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, No. 17CV147KAMCLP, 2018 WL 6179433, at *7 (E.D.N.Y. Nov. 27, 2018) (granting motion to seal documents "contain[ing] sensitive or proprietary technical" information); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10 CIV. 6100 PKC, 2012 WL 3114855, at *16 (S.D.N.Y. July 31, 2012) ("The parties may file the following documents under seal because they include engineering schematics, confidential source code and confidential deliberations about future products, the disclosure of which could unfairly allow competitors to develop competing products . . . .").

However, some of the proposed redactions are not narrowly tailored, as they seek to redact publicly available information. For example, compare the tweening theory described at Dkt. No. 245-1 ¶ 377 with the information filed publicly at Dkt. No. 228 at 39. And, the deposition transcript at Dkt. No. 218-11 at 25–26 contains proposed redactions for information left unredacted at Dkt. No. 202-7 at 8–9 or that is publicly available at Dkt. No. 192-15 at 8–9. Those exhibits contain the same pages from the same deposition, but the parties seek to redact information that has already been provided to the public. Little weight should be accorded to Microsoft's privacy interests in such instances.

And, as with Microsoft's confidential proprietary information, for some of the redactions, it is not apparent from the motions to seal and the information in the documents why disclosure of

the information would be harmful to Microsoft.  *See, e.g.,* Dkt. No. 218-11 at 42–43 (redacting descriptions of exhibits in deposition appendix, including "expert report of Riley"); *see also* Dkt. Nos. 218-10 at 9; 249-1 at 9, 14 n.90 (see main text on same page); 249-3 at 58–59.

The Court further notes that the proposed redactions at Dkt. No. 218-11 contain information necessary to resolve the issues raised in the parties' summary judgment motions and motion in limine regarding Ms. Riley's apportionment method.  The presumption of public access weighs heavily in favor of unsealing that information, irrespective of the inconsistent redactions.  Likewise, the redacted information found at Dkt. Nos. 250 at 3–8 and ¶ 402 and 283-2 at 32–33 is necessary for the Court's analysis of the parties' "array of cameras" arguments.  Here too, the presumption of public access to viewing judicial documents for dispositive motions such as the ones here outweighs the potential harm to Microsoft, and the request is denied as to those requests.

Accordingly, with the exception of the proposed redactions described above, the Court finds that the countervailing privacy concerns outweigh the public's need for public access.

### iv. Confidential Third-Party Information

Both Microsoft and Kewazinga seek to redact and seal documents containing confidential third-party information.  For this category of documents, the parties have provided little briefing, without any supporting law.  The basis for the parties' requests appears to be the fact that the documents and information were designated as "Highly Confidential," "Confidential," or "Attorney's Eyes Only" under the protective order in this action.  However, the application of a protective order to discovery documents does not necessarily mean that those documents meet the "higher threshold imposed by the First Amendment with respect to judicial documents." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013) (collecting cases); *see also Johnson v. Federal Bureau of Prisons*, No. 16 CV 3919, 2017 WL 5197143, at *3 (E.D.N.Y. Nov. 9, 2017) ("[A]lthough it is true that a protective order may provide guidance to the parties regarding what documents it

might be appropriate to seal and how such documents should be presented to the Court, the decision to allow documents to be filed under seal in connection with motions and court proceedings is a wholly separate inquiry governed by a different standard than whether to maintain documents disclosed in discovery in confidence.").

Indeed, as the Second Circuit has explained, "protective orders are useful to prevent discovery from being used as a club by threatening disclosure of matters which will never be used at trial." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). But "[a]t the adjudication stage . . . very different considerations apply." *Id.* "An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Id.*; *see also Lugosch*, 435 F.3d at 121 (same). Thus, the fact that the documents were given those designations under the Protective Order does not alone satisfy the parties' burden to demonstrate that the documents should be redacted or sealed. *See SEC v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001) ("While *Martindell* established a general and strong presumption against access to documents sealed under protective order when there was reasonable reliance upon such an order, . . . we have held more recently in *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*") that a subspecies of sealed documents in civil cases—so-called 'judicial documents'—deserve a presumption in favor of access.").

The privacy interests of "innocent third parties" should indeed weigh heavily in the Court's balancing equation, and the Court has seriously considered those privacy interests here. *Amodeo*, 71 F.3d at 1050. "Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *Id.* at 1051. "However, the fact that a third party's privacy interests are at stake does not obviate the need for the proposed redactions to be narrowly tailored to protect those interests." *Wiav Sols. Inc. v. HTC Corp.*, No. 19CV4978PGGKHP, 2021 WL 871415, at *1 (S.D.N.Y. Mar. 9, 2021).

14

Based on the wan applications made by the parties, the Court cannot conclude that the strong presumption of public access is overcome by the heavy weight of the third parties' privacy interests.  At the outset, the presumption of public access is significant as to many of these documents; the parties' motions have asked the Court to rule on issues that rely solely on the interpretation of documents that have been sealed in their entirety.  For example, the Court has been asked to evaluate whether agreements between Kewazinga and a third party, Sarnoff, deprive Kewazinga of standing to pursue its infringement claims, and whether Kewazinga is able to assert that it conceived of CIP-claimed subject matter prior to the filing date of its CIP patent application, based on its relationship with Sarnoff.  The documents that the parties have asked the Court to consider in connection with those issues appear to contain some sensitive information that might properly remain sealed, such as financial terms.  The same is true for certain settlement agreements submitted by the parties.  However, there are substantial portions of the agreements and documents that the Court will need to discuss to exercise its Article III judicial power and adjudicate the issues that have been raised by the parties.  *See, e.g.*, Dkt. Nos. 202-11; 202-16; 218-6 ¶¶ 216–17, 218-16.

Furthermore, the parties' proposed redactions are not narrowly tailored.  It appears that some of the parties' proposed redactions are overbroad and certain of the redactions cite to publicly filed documents.  For example, it is not obvious to the Court why the parties have redacted the information at Dkt. No. 218-6 ¶¶ 261–62.  The proposed redactions include information about a separate lawsuit, information that is available in a publicly-filed complaint.  And, the proposed redactions at ¶ 222 of the same document include information contained in the publicly-filed patents.  Redacting this sort of information—or any information that does not invoke the legitimate privacy interests of the interested parties—is improper.

And finally, certain of the parties' proposed redactions are inconsistent.  For example, compare the redacted information at Dkt. No. 218-6 ¶ 217 with the information in Kewazinga's

15

publicly filed opposition at Dkt. No. 246 at 48. Such redactions are fruitless and do not serve the privacy interests of the third parties because the information is already available to the public.

Accordingly, the Court denies without prejudice the requests to redact and seal exhibits asserting this basis for privacy protection. Instead, the parties are directed to resubmit proposed redactions. The Court will review these revised redaction requests and expects that the parties will only submit proposed redactions narrowly tailored to protect the privacy interests of the relevant third parties.

## V. CONCLUSION

For the reasons stated above, the parties have largely satisfied their burdens to demonstrate that the privacy interests and the risk of competitive harm that would result from disclosure outweigh the strong presumption of public access to the documents at issue. However, certain proposed redactions are not narrowly tailored to protect those interests. Accordingly, the parties' motions to redact and seal certain documents and exhibits are GRANTED in part, and DENIED as to the proposed redactions specified above.

The parties are directed to submit revised jointly proposed redactions for those documents involving a third-party confidentiality interest, by no later than April 7, 2021. In light of the examples of inconsistent redactions provided above, the parties are strongly encouraged to review all of their proposed redactions in conjunction with the exhibits they have submitted on the public docket and to ensure the proposed redactions are uniform throughout. Any documents for which the Court has denied the parties' request to redact or seal must be filed on the public docket by no later than April 7, 2021.

The Clerk of the Court is respectfully directed to terminate the motions at Dkt. Nos. 188, 204, 211, 227, 241, 247, 264, 269, 282, 299, and 307.

SO ORDERED.

Dated: March 31, 2021  
New York, New York

GREGORY H. WOODS  
United States District Judge