# STROOCK

September 28, 2022

Timothy K. Gilman
Direct Dial: 212.806.1320
Fax: 212.806.6006
tgilman@stroock.com

Honorable Gregory H. Woods, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**PUBLIC VERSION**

Re: *Kewazinga Corp. v. Microsoft Corporation*
Case No. 1:18-cv-04500-GHW
Proposal for Damages Presentation at Trial

Dear Honorable Judge Woods:

On September 21, 2022, the Court directed Kewazinga to submit an outline of how it will present damages at trial, as well as its interrogatory response and an explanation of "whether it discloses the information that you have outlined" regarding apportionment. Sept. 21, 2022 Tr. at 33:13-34:1. As expressed during that hearing, Kewazinga believes this showing "will provide a lot of clarity" and "make sure that everybody is on the same page" for the presentation of evidence at trial. *Id.* at 34:16-24.

As discussed by Kewazinga's damages expert, Michelle Riley, and in Kewazinga's supplemental interrogatory response, dated March 9, 2020, attached hereto as Exhibit A, Microsoft does not directly sell its alleged infringement of Kewazinga's patents. Rather, Microsoft profits by including the technology in three different products: (1) licensing Bing Maps API; (2) licensing and selling products including Windows 10; and (3) generating advertising revenue from the Bing website.[1] Therefore, damages must be apportioned down from these revenue streams to the allegedly infringing products.

For her apportionment of the Bing advertising revenue, Ms. Riley started with the revenue for the Bing ecosystem. The Court denied Microsoft's request to exclude this approach. D.I. 322 at 42-43 ("Microsoft's challenges . . . would be raised more appropriately on cross-examination").[2] Ms. Riley then apportioned to Bing.com/Maps based on "local intent," and then further apportioned down to the accused Streetside by the percentage of Bing.com/Maps users who also use Streetside. The Court criticized the first half of this approach as the "conflation of Bing.com/Maps users and Bing.com/Maps 'local search' users." *Id.* at 41. To address the Court's concern, while keeping

---

[1] In moving to exclude, Microsoft did not appear to challenge how Kewazinga apportioned revenue for the first two, but rather focused on the third. D.I. 212 at 13-15. Kewazinga focuses similarly here.
[2] As discussed, Ms. Riley should testify on opinions that Microsoft never challenged or for which the Court rejected Microsoft's challenges. *See, e.g., Bayer Healthcare v. Baxalta Inc.*, 989 F.3d 964, 984-85 (Fed. Cir. 2021) (permitting partial damages testimony); *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220, 2020 WL 978731, *6-*7 (C.D. Cal. Feb. 28, 2020) (same).

Honorable Gregory H. Woods, U.S.D.J.
September 28, 2022
Page 2

with Ms. Riley's overall methodology, the direct ratio of Bing.com to Bing.com/Maps users is also disclosed in the record and in Ms. Riley's report, and can be used instead, and then paired with her original apportioning step from Bing.com/Maps to Streetside. Sept. 21, 2022 Tr. at 8:25-9:8. Microsoft's damages expert, Dr. Meyer, similarly calculates the resulting percentage of Bing users who use Streetside, *i.e.*, ███, so no dispute exists as to this percentage. Ex. B, Meyer Report, at ¶ 96 & n.284. At trial, Ms. Riley will use this undisputed value. Ms. Riley then will use comparable Kewazinga and Microsoft licenses as evidence of the proper royalty rate, for which Microsoft's challenges were also denied by the Court. D.I. 322 at 43 ("Microsoft's challenges to the comparability of the license agreements and [Ms. Riley's] interpretation of them would be raised more appropriately on cross-examination."). It is undisputed that Ms. Riley is a qualified expert, it is undisputed or adjudicated that this approach is part of a proper methodology, and this testimony would assist the jury with their consideration of the evidence—it should be admitted.

Because Ms. Riley will not further apportion within Streetside, Kewazinga will rely on evidence it identified in its interrogatory response or otherwise disclosed. *See* Ex. A at, *e.g.*, 55-59. For example, Kewazinga identified documents describing Streetside features. *See, e.g.*, MSFT-KC00054650 (Ex. C) at 54664 (listing the "Data Products" of Streetside) and 54692 (showing the components of the "Streetside System Design"). They also discuss the relative value of the non-patented components of Streetside. *See, e.g.*, MSFT-KC00054574 (Ex. D) at 54575 (discussing the relative importance of Streetside's privacy features in the United States). Microsoft engineers and corporate representatives have authenticated and testified about these documents. And consistent with his report, Kewazinga's technical expert, Dr. Hanna, will explain to the jury which features of Streetside are covered by Kewazinga's patents. *See, e.g.*, D.I. 250, ¶¶ 241-43. Notably, "privacy blurring of faces and license plates" was the only undisputed unpatented aspect of Streetside that Microsoft cited for its summary judgment and *Daubert* motions, and its relative value is addressed by the very documents that Kewazinga identified in its interrogatory response. *Compare* D.I. 250, ¶ 241 *with* Ex. D at 54575.

Moreover, Kewazinga identified many of these documents—including the two cited above—explicitly in the context of *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (1970), factor 13, *i.e.*, "the portion of the realizable profit that should be credited to the invention as distinguished from **non-patented** elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."[3] This factor is nearly identical to the apportionment question to be presented to the jury. *See, e.g.*, *Fed. Cir. Bar Ass'n Model Pat. Jury Instructions*, May 2020 (instructing the jury to consider "[t]he value that the claimed invention contributes to the accused product" versus "[t]he value that factors other than the claimed invention contribute to the accused product") (Ex. E at 6) ; *Am. Intell. Prop. Law Ass'n Model Pat. Jury Instructions*, 2019 ("The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product…") (Ex. F at 51). Microsoft was therefore timely apprised of how Kewazinga would use these four documents, as well as additional documents describing the features of Streetside and their relative value that Kewazinga identified as "provid[ing] further information relevant to apportionment." *See* Ex. A at 56. And the Federal Circuit has confirmed that "apportionment can be achieved in

---

[3] The so-called "*Georgia-Pacific*" factors—only one of which is "the opinion testimony of qualified experts"—are the seminal factors for a jury assessing reasonable royalty damages. Ex. F at 10.2.5.3.

different ways, one of which is through the jury's determination of an appropriate royalty by applying the so-called *Georgia-Pacific* factors." *Sprint Commc'ns Co., v. Time Warner Cable, Inc.*, 760 F. App'x 977, 983 (Fed. Cir. 2019).

During the September 21 Hearing, Microsoft argued that "the place" to present evidence regarding unpatented features "was during the summary judgment briefing." Sept. 21, 2022 Tr. at 32:5-9. That was precisely what Kewazinga did—contesting, with specific record citation, whether any unpatented aspects existed other than the privacy features noted above. *See* D.I. 250, ¶ 241. And Kewazinga stated during summary judgment that "privacy blurring" did not have "any purpose or value to Streetside when disconnected from patented features," consistent with Microsoft's own description of privacy features in the United States market. *Compare* D.I. 250, ¶ 241 *with* Ex. D at MSFT-KC00054575. This evidence and argument regarding unpatented features was timely disclosed.

The record will contain ample evidence for apportionment based on such features. Ms. Riley will testify as to an "Overview of Streetside" including its benefits and value drivers, importance to consumers, and role in generating profits for Microsoft (Ex. G, Riley's Opening Report ¶¶ 132-145) and the "Benefits Associated with the Patents-in-Suit" (*id.*, ¶¶152-153). Microsoft's documents and witnesses will describe the features of Streetside and their relative value. And Kewazinga's technical expert, Dr. Hanna, will testify as to what Streetside features infringe and are related to the patented technology. This record will give the jury ample evidence—both fact and expert—as to which features are patented, which are unpatented, and their relative value. All of this was timely disclosed to Microsoft, *e.g.*, as part of Kewazinga's interrogatory response, as well as during the summary judgment phase. *See* Ex. A at, *e.g.,* 56-59; D.I. 250, ¶ 241.

The Federal Circuit—whose precedent is controlling—has been clear that "expert testimony is not necessary to the award of damages." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); *see also Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-cv-04405, 2021 WL 2577536, at *7–8 (N.D. Cal. June 23, 2021) (discussing and following *Dow Chemical*). Microsoft conceded as much during the September 21 hearing. Sep. 21, 2022 Tr. at 26:6-11 ("Court: Is the issue of apportionment one that can be resolved by a jury as a matter of fact, on this topic, without the benefit of expert testimony? Microsoft: In theory, your Honor, I would say yes.") This record—which includes not only fact testimony and documents regarding unpatented features, but also relevant expert testimony—is sufficient from which to determine the reasonable royalty mandated by 35 U.S.C. § 284. The contrary approach of entering judgment of zero or nominal damages would be improper in light of this record evidence, as well as manifestly prejudicial to Kewazinga. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328-1329 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("[A] judge may only award a zero royalty for infringement if there is no genuine issue of material fact that zero is the only reasonable royalty"); *see also Dow Chem.,* 341 F.3d 1381-82 ("The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty."). This is especially true in light of the record evidence discussed above.

The damages that Kewazinga will present at trial are clear, and the evidence on which Kewazinga will rely was timely disclosed. This evidence directly addresses the questions the jury will be asked, and is sufficient to determine the reasonable royalty damages that are required by law.

Honorable Gregory H. Woods, U.S.D.J.
September 28, 2022
Page 4

                    Respectfully submitted,

                    */s/ Timothy K. Gilman*
                    Timothy K. Gilman
                    tgilman@stroock.com
                    Saunak K. Desai
                    sdesai@stroock.com
                    Gregory Springsted
                    gspringsted@stroock.com
                    STROOCK & STROOCK & LAVAN LLP
                    180 Maiden Lane
                    New York, NY 10038
                    Tel: (212) 806−5400

                    Ian G. DiBernardo
                    idibernardo@brownrudnick.com
                    BROWN RUDNICK LLP
                    7 Times Square
                    New York, NY 10036
                    Tel: (212) 209−4879

                    *Attorneys for Plaintiff Kewazinga Corp.*

cc: Counsel of Record (via ECF filing)